UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY J. ZENTNER, on behalf of himself
and all others similarly situated, and
Derivatively on behalf of MUNICIPAL
OPPORTUNITY FUND TWO LLC,
MUNICIPAL OPPORTUNITY FUND
THREE LLC, MUNICIPAL
OPPORTUNITY FUND FIVE LLC, MAT
FIVE LLC, MUNICIPAL
OPPORTUNITY FUND FIVE LLC –
NATIONAL PORTFOLIO, and MAT
FIVE LLC – NATIONAL PORTFOLIO II,

            Plaintiff,

            v.

CITIGROUP INC., CITIGROUP
ALTERNATIVE INVESTMENTS LLC,
CITIGROUP GLOBAL MARKETS INC.,
BIGELOW & HART CAPITAL
MANAGEMENT, LLC, MUNICIPAL
OPPORTUNITY FUND TWO LLC,
MUNICIPAL OPPORTUNITY FUND
THREE LLC, MUNICIPAL
OPPORTUNITY FUND FIVE LLC, MAT
FIVE LLC, MUNICIPAL
OPPORTUNITY FUND FIVE LLC –
NATIONAL PORTFOLIO, MAT FIVE
LLC – NATIONAL PORTFOLIO II,
DONALD LUCARDI, and REAZ ISLAM,

            Defendants.

CASE NO. 08 CV 6119



**NOTICE OF REMOVAL**

RECEIVED
JUL 0 3 2008
U.S.D.C. S.D. N.Y.
CASHIERS

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1367, 1441,

1446, and 1453, defendants Citigroup Inc., Citigroup Alternative Investments LLC, Citigroup

Global Markets Inc., Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three

LLC, Municipal Opportunity Fund Five LLC, MAT Five LLC, Municipal Opportunity Fund

Five LLC – National Portfolio, MAT Five LLC – National Portfolio II and Donald Lucardi

(collectively, "Citigroup Defendants") and defendant Reaz Islam ("Islam"), by their undersigned

attorneys, submit this Notice of Removal from the Supreme Court of the State of New York, New York County, in which the above-captioned case is now pending, to the United States District Court for the Southern District of New York and, in support of said notice, state as follows:[1]

## NATURE OF THE ACTION

1.    This action, styled *Gary J. Zentner, on behalf of himself and all others similarly situated, and Derivatively on behalf of Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC, MAT Five LLC, Municipal Opportunity Fund Five LLC – National Portfolio, and MAT Five LLC – National Portfolio II* v. *Citigroup Inc., Citigroup Alternative Investments LLC, Citigroup Global Markets Inc., Bigelow & Hart Capital Management, LLC, Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC, MAT Five LLC, Municipal Opportunity Fund Five LLC – National Portfolio, MAT Five LLC – National Portfolio II, Donald Lucardi and Reaz Islam*, Index No. 08601710, was filed in the Supreme Court of the State of New York, County of New York, on June 6, 2008.

2.    Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and summons are attached hereto as Exhibit A.

## THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

3.    Plaintiff's putative class action fits squarely within the definition of federal diversity jurisdiction as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified as amended in scattered sections of 28 U.S.C.) ("CAFA"), in that it

---

[1]    In filing this Notice of Removal, the Citigroup Defendants and Islam do not waive any defenses that may be available to them.

is: (i) a putative class action; (ii) with "minimal diversity"; (iii) no fewer than 100 members; and (iv) at least $5,000,000 in controversy. *Blockbuster, Inc.* v. *Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Mattera* v. *Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. ).

## A.    Class Action

4.    A "class action" is defined by CAFA as any civil action filed under Fed. R. Civ. P. 23 or "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

5.    Plaintiff's lawsuit meets the definition of "class action" under 28 U.S.C. § 1332(d)(1)(B) because it was filed under the class action provision of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 901. (*See* Compl. ¶ 80.)

## B.    Diversity of Citizenship

6.    Pursuant to CAFA, a district court has original jurisdiction of any civil action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

7.    For the purposes of diversity jurisdiction, the citizenship of a corporation is defined as "any State by which [a corporation] has been incorporated and of the State where it has its principal place of business." *Id.* § 1332(c)(1).

8.    For the purposes of diversity jurisdiction, the citizenship of an unincorporated association, including a limited liability company, is defined by CAFA as "the State where [an unincorporated association] has its principal place of business and the State under whose laws it is organized." *Id.* § 1332(d)(10).

9.    For the purposes of diversity jurisdiction, the citizenship of an individual depends on his or her domicile. *See, e.g., Linardos* v. *Fortuna*, 157 F.3d 945, 948 (2d Cir.1998) (citing *Gilbert* v. *David*, 235 U.S. 561, 569 (1915)).

3

10.    The citizenship of the defendants is as follows:

- Defendant Citigroup Inc. is a Delaware corporation with its principal place of business in New York.

- Defendant Citigroup Alternative Investments LLC is a Delaware company with its principal place of business in New York.

- Defendant Citigroup Global Markets Inc. is a New York corporation with its principal place of business in New York.

- Defendant Bigelow & Hart Capital Management, LLC, is a Delaware company with its principal place of business in Colorado.

- Defendants Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC, and MAT Five LLC (collectively, the "MAT Funds") are all Delaware companies with their principal places of business in New York.

- Defendant Donald Lucardi was and is domiciled in the state of New York, where his address is 252 Seventh Avenue #15C, New York, New York 10001.

- Defendant Reaz Islam was and is domiciled in the state of New York, where his address is 98-05 70th Avenue, Forest Hills, New York 11375.

11.    Upon information and belief, Plaintiff Gary J. Zentner ("Plaintiff" or "Zentner") was and is domiciled in the state of Pennsylvania, where his address is 3 Couch Farm Road, Pittsburgh, Pennsylvania.  (*See* Compl. ¶ 21.)

12.    Because Plaintiff is a citizen of Pennsylvania and none of the defendants is a citizen of that state, diversity of citizenship is established for the purposes of CAFA.

4

## C.    *Number of Proposed Class Members*

13.    The provisions of 28 U.S.C. § 1332(d)(2), only apply if "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *Id.* § 1332(d)(5)(B).

14.    Plaintiff alleges "that there are thousands of members of the Class." (Compl. ¶ 83.)  Satisfaction of this requirement is therefore not in dispute. *See Blockbuster, Inc.,* 472 F.3d at 57.

## D.    *Amount in Controversy*

15.    Under CAFA, a district court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(d)(2).

16.    In determining the amount in controversy, "the claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6).

17.    There are at least 100 class members, (*see* ¶ 14, *supra*), and as Plaintiff has alleged, correctly, each class member was required to invest no less than $250,000 in the MAT Funds. (*See* Compl. ¶ 40.)  The class members' aggregate investment therefore exceeds $25,000,000.

18.    Since shares of the MAT Funds were issued, the aggregate value of the shares has declined by more than 50 percent.  The aggregate decrease in value of the class members' shares is therefore likely to be an amount in excess of $12,500,000.

19.    It is therefore more likely than not that the amount in controversy in this action exceeds $5,000,000. *See, e.g., Blockbuster, Inc.,* 472 F.3d at 58 (applying a "reasonable probability" standard); *Mattera,* 239 F.R.D. at 78 (applying a "preponderance of the evidence" standard).

**E.    *None of the Securities Related Exceptions of 28 U.S.C. 1332(d)(9) Applies***

20.    Plaintiff's lawsuit is not within the "covered securities" exception of 28 U.S.C. § 1332(d)(9)(A) because shares of the MAT Funds are not covered securities as defined under section 16(f)(3) of the Securities Act of 1933, 15 U.S.C. § 77p(f)(3),[2] and section 28(f)(5)(E) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(f)(5)(E). *See* 28 U.S.C. § 1332(d)(9)(A). Specifically, shares of the MAT Funds are not nationally traded securities, nor are they registered under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.*

21.    Plaintiff's lawsuit is not within the "internal affairs or governance" exception of 28 U.S.C. § 1332(d)(9)(B) because Plaintiff is asserting claims related to the marketing and solicitation of investment in the securities. (*See, e.g.*, Compl. ¶¶ 92-106.)

22.    Plaintiff's lawsuit is not within the exception of 28 U.S.C. § 1332(d)(9)(C) as to claims solely involving "the rights, duties . . . and obligations relating to or created by or pursuant to any security," because Plaintiff's claims are based on the marketing of the securities and not the terms of those securities. (*See, e.g.*, Compl. ¶¶ 8, 47-53, 92-106.) *See Estate of Pew v. Cardarelli*, No. 06-5703-mv, 2008 WL 2042809, at *6 (2d Cir. May 13, 2008) (holding that the § 1332(d)(9)(C) exception encompasses claims grounded in the terms of the security itself and not claims of fraudulent marketing).

**F.    *None of the Other CAFA Exceptions Applies***

23.    The party opposing removal jurisdiction has the burden of proof as to the applicability of either the discretionary or mandatory exceptions of §§ 1332(d)(3) and (4). *See, e.g.*, *Brook* v. *UnitedHealth Group Inc.*, No. 06 CV 12954(GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007); *Mattera*, 239 F.R.D. at 79.

24.    Without conceding that they have the burden of proof with respect to the applicability of the exceptions contained in §§ 1332(d)(3) and (4), the Citigroup Defendants and Islam assert that none of these exceptions applies because:

- Less than one-third of the members of all proposed plaintiff classes in the aggregate are citizens of the State of New York. *See* 28 U.S.C. § 1332(d)(4).

- The primary defendants are not all citizens of the State of New York (*see* ¶ 10, *supra*). *See id.* §§ 1332(d)(3)-(4); *Brook*, 2007 WL 2827808, at *6 (considering all defendants to be "primary defendants" where plaintiff seeks to hold them jointly and severally liable).

- Due to the geographic diversity of the proposed plaintiff class, as alleged in the Complaint (*see* Compl. ¶ 82), "principle injuries resulting from the alleged conduct or any related conduct of each defendant" were not incurred in the State of New York. *See* 28 U.S.C. § 1332(d)(4)(A); *Brook*, 2007 WL 2827808, at *4 (quoting *Mattera*, 239 F.R.D. at 80) ("[T]he principle injuries suffered by the class must be limited to a particular state; it does not apply to cases in which the defendants engaged in conduct that 'could be alleged to have injured [persons] throughout the country or broadly throughout several states.'").

- During the three-year period preceding the filing of this action, at least one other class action has been filed asserting the same or similar factual allegations against many of the same defendants on behalf of a similar putative class. *See* 28 U.S.C. § 1332(d)(4)(A). Specifically, on May 1, 2008, well within the three-year period preceding the June 6, 2008 filing of this case, *Raymond Revocable Trust* v. *MAT Five LLC, et al.*, No. 08 Civ.

---

[2]    Although § 1332(d)(9)(A) refers to "15 U.S.C. § 78p(f)(3)," it is likely that the reference is meant to be to 15 U.S.C. § 77p(f)(3).

4152 (S.D.N.Y.) ("*Raymond*") was filed. The *Raymond* complaint asserts similar factual allegations on behalf of a proposed class of investors in the MAT Five LLC fund. *See Raymond* complaint (attached hereto as Exhibit B). Many of the same defendants are named in the *Raymond* complaint, including MAT Five LLC, Citigroup Alternative Investments LLC, Citigroup Global Markets Inc., and Reaz Islam. *See id.*

**G.   *This Court Has Supplemental Jurisdiction Over Those Claims Not Within the Subject Matter Jurisdiction Conferred by CAFA***

25.    Those claims in the Complaint over which this Court does not have original jurisdiction, pursuant to 28 U.S.C. § 1332(d)(2), "form part of the same case or controversy." 28 U.S.C. § 1367.

26.    This Court therefore has supplemental jurisdiction over all other claims in the Complaint.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

27.    This action is removable to this Court pursuant to 28 U.S.C. § 1441(a) because there is original jurisdiction and the Southern District of New York embraces the place where the state court action is currently pending.

28.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) as it has been filed within thirty days of the date on which a copy of the complaint was received by the Citigroup Defendants and Islam. As of the date of this Notice of Removal, upon information and belief, the defendants that had been served with the summons and Complaint were as follows:

- Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC and MAT Five LLC were served on June 26, 2008.

8

29.    This Notice of Removal is also appropriate under 28 U.S.C. § 1453(b), which provides that "[a] class action may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." *Id.* The exceptions contained in § 1453(d) do not apply for the same reasons that the exceptions contained in § 1332(d)(9) do not apply (*see* ¶¶ 20-22, *supra*). *See id.* § 1453(d).

30.    The information required pursuant to Local Civil Rule 81.1(a) has been provided (*see* ¶¶ 10-11 & 28, *supra*).

31.    Written notice of this filing will be provided to all adverse parties, and a copy of this Notice of Removal will be filed in the appropriate State court, as required by 28 U.S.C. § 1446(d).

32.    Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 81.1(b), a copy of the Complaint and summons are attached hereto as Exhibit A.

WHEREFORE, the above described action now pending against the Citigroup Defendants and Islam in the Supreme Court of the State of New York, County of New York, is properly removed to this Court.

Dated:  July 2, 2008
        New York, New York

                                        Respectfully submitted,

                                        PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP

                                        By: _Charles E. Davidow_

                                        Brad S. Karp
                                        Michael E. Gertzman
                                        Kristy Tillman
                                        1285 Avenue of the Americas
                                        New York, New York  10019-6064
                                        Tel.    (212) 373-3000
                                        Fax     (212) 757-3980
                                        bkarp@paulweiss.com
                                        mgertzman@paulweiss.com
                                        ktillman@paulweiss.com

                                        Charles E. Davidow
                                        1615 L Street, N.W.
                                        Washington, D.C. 20036-5694
                                        Tel.    (202) 223-7300
                                        Fax     (202) 223-7420
                                        cdavidow@paulweiss.com

                                        *Attorneys for Defendants Citigroup Inc.,
                                        Citigroup Alternative Investments LLC,
                                        Citigroup Global Markets Inc., Municipal
                                        Opportunity Fund Two LLC, Municipal
                                        Opportunity Fund Three LLC, Municipal
                                        Opportunity Fund Five LLC, MAT Five
                                        LLC, Municipal Opportunity Fund Five
                                        LLC – National Portfolio, MAT Five LLC –
                                        National Portfolio II, and Donald Lucardi*

                                10

ARKIN KAPLAN RICE LLP

By: _____

Sean R. O'Brien
590 Madison Avenue, 35th Floor
New York, New York
Tel.   (212) 333-0200
Fax   (212) 333-2350
sobrien@arkin-law.com

*Attorneys for Defendant Reaz Islam*

11

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
GARY J. ZENTNER, on behalf of himself and all others similarly
situated, and Derivatively on behalf of MUNICIPAL OPPORTUNITY
FUND TWO LLC, MUNICIPAL OPPORTUNITY FUND THREE
LLC, MUNICIPAL OPPORTUNITY FUND FIVE LLC,
MAT FIVE LLC, MUNICIPAL OPPORTUNITY FUND
FIVE LLC – NATIONAL PORTFOLIO, and MAT FIVE
LLC – NATIONAL PORTFOLIO II,

                                    Plaintiffs,

                    -against-

CITIGROUP, INC., CITIGROUP ALTERNATIVE
INVESTMENTS, LLC, CITIGROUP GLOBAL
MARKETS, INC., BIGELOW & HART CAPITAL
MANAGEMENT, LLC, MUNICIPAL OPPORTUNITY FUND
TWO LLC, MUNICIPAL OPPORTUNITY FUND THREE
LLC, MUNICIPAL OPPORTUNITY FUND FIVE LLC,
MAT FIVE LLC, MUNICIPAL OPPORTUNITY FUND
FIVE LLC – NATIONAL PORTFOLIO, MAT FIVE
LLC – NATIONAL PORTFOLIO II, DONALD LUCARDI,
and REAZ ISLAM,

                                    Defendants.
-------------------------------------------------------------------X

**FILED**

Index No:

JUN 0 6 2008

COUNTY CLERKS OFFICE
NEW YORK

**SUMMONS**

08601710

**You are hereby summoned** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons,
to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after
the service of this summons, exclusive of the day of service (or within 30 days
after the service is complete if this summons is not personally delivered to you
within the State of New York); and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: June 6, 2008
New York, NY

BRAGAR WEXLER EAGEL & SQUIRE, PC

By: _____
        Lawrence P. Eagel
885 Third Avenue – Suite 3040
New York, NY 10022
(212) 308-5858
Co-Counsel for Lead Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x
GARY J. ZENTNER, on behalf of himself and all others similarly
situated, and Derivatively on behalf of MUNICIPAL OPPORTUNITY
FUND TWO LLC, MUNICIPAL OPPORTUNITY FUND THREE
LLC, MUNICIPAL OPPORTUNITY FUND FIVE LLC,
MAT FIVE LLC, MUNICIPAL OPPORTUNITY FUND
FIVE LLC – NATIONAL PORTFOLIO, and MAT FIVE
LLC – NATIONAL PORTFOLIO II,

                Plaintiffs,                      Index No:

        -against-

CITIGROUP, INC., CITIGROUP ALTERNATIVE
INVESTMENTS, LLC, CITIGROUP GLOBAL
MARKETS, INC., BIGELOW & HART CAPITAL
MANAGEMENT, LLC, MUNICIPAL OPPORTUNITY FUND
TWO LLC, MUNICIPAL OPPORTUNITY FUND THREE
LLC, MUNICIPAL OPPORTUNITY FUND FIVE LLC,
MAT FIVE LLC, MUNICIPAL OPPORTUNITY FUND
FIVE LLC – NATIONAL PORTFOLIO, MAT FIVE
LLC – NATIONAL PORTFOLIO II, DONALD LUCARDI,
and REAZ ISLAM,

                Defendants.
--------------------------------------------------------------------x

**08601710**

FILED
JUN 0 6 2008
COUNTY CLERK'S OFFICE
NEW YORK

## CLASS ACTION AND DERIVATIVE COMPLAINT

Plaintiff, GARY J. ZENTNER, on behalf of himself and all others similarly

situated ("Lead Plaintiff"), by and through his counsel, Silverman Acampora LLP and

Bragar Wexler Eagel & Squire, P.C., for his complaint against defendants Citigroup,

Inc., Citigroup Alternative Investments, LLC, Citigroup Global Markets, Inc., Bigelow

& Hart Capital Management, LLC, Municipal Opportunity Fund Two LLC, Municipal

Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC, MAT Five LLC,

Municipal Opportunity Fund Five LLC – National Portfolio, and MAT Five LLC –

National Portfolio II, Donald Lucardi, and Reaz Islam (collectively referred to as

1

JSH/D266344v2/F055307

"Defendants"), allege upon information and belief as follows:

## NATURE OF THE ACTION

1.      This action is brought on behalf of all investors in Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, Municipal Opportunity Fund Five LLC, MAT Five LLC, Municipal Opportunity Fund Five LLC – National Portfolio, and MAT Five LLC – National Portfolio II (collectively, the MAT Funds), who purchased their interest between March 1, 2003 and December 31, 2007 (the "Class Period").    Plaintiff seeks damages for (a) negligent misrepresentation and common law fraud under New York law; (b) breach of fiduciary duties and gross negligence resulting in the financial devastation suffered by innocent investors in the MAT Funds; and (c) derivatively on behalf of the MAT Funds.

2.      The objective of Municipal Opportunity Fund Two LLC, Municipal Opportunity Fund Three LLC, and Municipal Opportunity Fund Five LLC was to employ a unique alpha strategy to deliver absolute returns and tax-advantaged income through economically leveraged investments in fixed-rate, tax-exempt municipal bonds.

3.      Specifically, the MAT Funds' strategy was to exploit the market inefficiency between long-term municipal bonds relative to hedging interest rate risk in the taxable markets by purchasing municipal bonds and interest rate hedges when the ratio of municipal insured yields to Treasury yields was at or below historical averages.

JSH/D266344v2/F056307

4.      Municipal Opportunity Fund Five LLC -- National Portfolio is a separate series of shares of Municipal Opportunity Fund Five LLC.

5.      MAT Five LLC - National Portfolio II is a separate portfolio of MAT Five LLC, and invested substantially all of its assets in Municipal Opportunity Fund Five LLC -- National Portfolio, a separate portfolio of Municipal Opportunity Fund Five LLC.

6.      Each of the MAT Funds was solely created, marketed, and/or managed, in whole or in part, by Citigroup, Inc., Citigroup Alternative Investments, LLC, Citigroup Global Markets, Inc., Donald Lucardi ("Lucardi"), and Reaz Islam ("Islam" and, together with Lucardi sometimes the "Individual Defendants").

7.      CAI delegated a portion of its management responsibilities of Municipal Opportunity Fund Five LLC -- National Portfolio to Bigelow & Hart Capital Management, LLC ("Bigelow"), until March 2008 when CAI terminated its agreement with Bigelow.

8.      Defendants Citigroup, Inc., and Citigroup Global Markets, Inc. (the "Marketing Defendants") and the Individual Defendants marketed the MAT Funds as a relatively safe investment, telling potential investors that the Funds' returns were consistent with its adequately hedged, relatively low-risk profile.

9.      Although the offering documents represented that the MAT Funds' managers would regularly monitor market conditions and actively manage the portfolios and adequately hedge risk by making hedge adjustments as needed, the managers, including the Individual Defendants, shirked those responsibilities and failed to disclose their grossly negligent errors and/or omissions to investors. To the

3

JSH/D206344v2/F055307

contrary, the Marketing Defendants and the Individual Defendants affirmatively represented and continued to represent to investors, through the end of January 2008, that the MAT Funds were not subject to the substantial losses they ultimately incurred. The fact that the MAT Funds were highly leveraged made it absolutely critical that the MAT Funds' portfolio be managed with a view toward minimizing risk, and that investors be provided with accurate and timely disclosures regarding their investments.

10. Despite their duties and responsibilities as managers of the MAT Funds' affairs, Defendants Citigroup Alternative Investment, LLC, and Bigelow & Hart Capital Management, LLC (collectively, the "Management Defendants"), as well as the Individual Defendants, abdicated their responsibilities to the MAT Funds and their investors by failing to conduct any meaningful sensitivity analysis and by neglecting to manage the MAT Funds in a manner that would minimize risk and control losses.

11. Moreover, the Management Defendants, the Marketing Defendants, and the Individual Defendants systematically failed to disclose to investors that the Management Defendants and/or Individual Defendants were not (a) sufficiently monitoring and adequately assessing the risks inherent in the MAT Funds' investments; (b) determining the frequency and severity of defaults of the underlying assets of each of the structured finance securities invested in by the MAT Funds; (c) developing and implementing mechanisms that would reduce exposure under certain market conditions; and (d) otherwise adequately engaging in hedging techniques to minimize risk. Based upon those non-disclosures and failures to

4

JSH/D266344v2/F055307

perform their duties, the Management Defendants, the Marketing Defendants and the Individual Defendants breached their fiduciary duties to the MAT Funds and investors in the MAT Funds.

12.    Indeed, the Management Defendants' and Individual Defendants' failure to sufficiently monitor market conditions and otherwise hedge risk in the MAT Funds' portfolios is apparent, at least in part, from the MAT Funds' precipitous decline in value in late 2007 and early 2008.

13.    At the same time that they were performing their tasks so poorly, the Management Defendants earned substantial management fees of between 0.35% and 0.38% per annum on the face value of municipal bonds, incentive fees of 20% of the total return on investments above a 5.5% hurdle, and a placement fee of 1% for each investment in the MAT Funds.

14.    In addition, the Marketing Defendants and Individual Defendants breached their fiduciary duties by their continued, affirmative representations to investors regarding the low risk of the investments at a time when those Defendants knew or should have known that the MAT Funds were in a severe financial crisis.

15.    Had Lead Plaintiff and other investors known the truth, they would have taken steps to avoid the massive losses they suffered, either by refusing to invest in the MAT Funds, withdrawing their investments from the MAT Funds, or removing the managers.

16.    The Management Defendants' and/or Individual Defendants' abdication of their responsibilities was ultimately disclosed in January 2008, when Defendants announced the substantial losses incurred by the MAT Funds.

JSH/D266344v2/F055307

17.    For these reasons and those set forth below, the Marketing Defendants, the Management Defendants, and the Individual Defendants violated their fiduciary duties to the MAT Funds and the investors.

18.    The allegations set forth herein are based upon (a) the personal knowledge and the acts of Lead Plaintiff and upon information and belief as to all other matters, and (b) the investigation conducted to date by counsel including, but not limited to, a review of the marketing and subscription materials provided to Lead Plaintiff prior to their purchase of the MAT Funds, a review of private placement memoranda pertaining to the MAT Funds, a review of various financial statements for the MAT Funds, a review of investor reports for the MAT Funds and an analysis of available news articles and reports, price history data, public filings, press releases and other matters of public record.

## JURISDICTION AND VENUE

19.    Jurisdiction is proper pursuant to CPLR § 301 because Defendants are New York domiciliaries subject to the jurisdiction of New York Courts, and/or pursuant to CPLR § 302 because Defendants transact business in, or have committed tortious acts within, the State of New York.

20.    Pursuant to CPLR § 503, venue is proper in New York County since one or more of the Defendants reside in New York County.

6

JSH/D266344v2/F055307

**PARTIES**

21.    At all times relevant hereto, Plaintiff Gary J. Zentner ("Zentner") was and is a resident of the state of Pennsylvania, with an address at 3 Couch Farm Road, Pittsburgh, Pennsylvania.

22.    In or about October 2003, Zentner invested $750,000 in MAT Two.

23.    In or about March 2003 and January 2006, Zentner invested $200,000 and $500,000, respectively, in MAT Three.

24.    In or about February 2007, Zentner invested $1 million in MAT Five.

25.    Zentner still holds each and every one of the aforementioned investments.

26.    Defendant Citigroup, Inc., ("Citigroup") is a major American financial services company with offices at 399 Park Avenue, New York, New York.  With the exception of Bigelow & Hart Capital Management, LLC, all of the other defendants in this case are subsidiaries or affiliates of Citigroup.

27.    At all times relevant hereto, Defendant Citigroup Alternative Investments, LLC, ("CAI") is registered with the Securities and Exchange Commission as an investment advisor and conducts business at 731 Lexington Avenue, New York, New York.

28.    Defendant Citigroup Global Markets, Inc. ("CGM") is a Delaware Corporation and is registered with the Securities and Exchange Commission as a broker-dealer.

7

JSH/D266344v2/F055307

29.    Defendant Bigelow & Hart Capital Management, LLC, is a limited liability corporation with offices at 50 South Steele Street, Suite 1050, Denver, Colorado.

30.    Defendant Municipal Opportunity Fund Two LLC is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

31.    Defendant Municipal Opportunity Fund Three LLC is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

32.    Defendant Municipal Opportunity Fund Five LLC is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

33.    Defendant MAT Five LLC is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

34.    Defendant Municipal Opportunity Fund Five LLC – National Portfolio is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

35.    Defendant MAT Five LLC – National Portfolio II is a Delaware limited liability company with offices c/o Corporation Trust Company, Suite 400, 2711 Centerville Road, Wilmington, Delaware.

8

JSH/D266344v2/F056307

36.    At all times relevant hereto, Defendant DONALD LUCARDI was and is a Product Marketing Specialist for CITIGROUP ALTERNATIVE INVESTMENTS, LLC, with an office at 731 Lexington Avenue, New York, New York.

37.    At all times relevant hereto, Defendant REAZ ISLAM was and is a Senior Investment Officer and Head of Citi Fixed Income Alternative Investments for CITIGROUP ALTERNATIVE INVESTMENTS, LLC, with an office at 731 Lexington Avenue, New York, New York.

## BACKGROUND FACTS

38.    Lead Plaintiff became a client of Citigroup in 2003, introduced by a broker at Solomon Smith Barney, Inc., a division and service mark of CGM.

39.    As explained to Lead Plaintiff by the Marketing Defendants and the Individual Defendants, each of the MAT Funds was created as a vehicle for investors to gain exposure to specific segments of the fixed income markets. The goal of the MAT Funds was to generate absolute returns and tax-advantaged income in the fixed income market utilizing hedging and leverage strategies to produce stable cash flow.

40.    The minimum investment in the MAT Funds varied depending upon the series of shares to be issued, but at all relevant times was no less than Two Hundred Fifty Thousand ($250,000.00) Dollars.

41.    CAI served as "Managing Agent" for the MAT Funds and was responsible for investment management and administrative matters. CAI delegated to Defendant Bigelow a portion of CAI's responsibilities for managing the Municipal

9

JSH/D266344v2/F055307

Opportunity Fund Five LLC – National Portfolio until March 2008, when CAI terminated its agreement with Bigelow.

42.    CAI's management fees varied depending upon the series of shares issued, but at all relevant times its base fee was no less than 0.35% per annum of the face value of the municipal bonds. Moreover, CAI was entitled to an incentive allocation of 20% of the total returns above a 5.5% annual "hurdle" rate.

43.    In addition to the management fees, shares offered through CGM and another subsidiary or affiliate of Citigroup, Citigroup Investment Services, entitled Defendants to a "placement fee" of up to 1% of the subscription amount.

44.    The foregoing fee structure provided incentive for Defendants to heavily market the MAT Funds and for CAI to select riskier and/or more speculative investments for the MAT Funds than it would otherwise have selected.

45.    Based on the foregoing fee structure, and knowing that the MAT Funds were a proprietary product of CGM that was marketed and sold only to investors who were in either managed accounts at CGM (Citigroup's Smith Barney brokerage division) or who were already existing customers of CGM, the Marketing Defendants and Individual Defendants had conflicting duties of loyalty and a higher standard of care was therefore required.

46.    The Marketing Defendants, Management Defendants, and the Individual Defendants failed to exercise the proper standard of care and breached their fiduciary duties by, in addition to the other reasons set forth herein, preying upon their own customers in order to maximize their own returns under the fee structure in connection with the sale of these proprietary products.

JSH/D286344v2/F055307

## Marketing of the Funds

47.    Beginning in or about 2003 and continuing through January 2008, the Marketing Defendants and the Individual Defendants marketed the MAT Funds to potential investors as a relatively low-risk investment that offered absolute returns and tax advantaged income.

48.    In published documents sent to and reviewed by Lead Plaintiff, Citigroup, CAI, and CGM consistently stated that the risk of the investment losing more than 11.4% was not greater than 6.2% and that the risk of losing more than 33.4% was zero.

49.    Over the course of several years, Defendants continued to make those and other representations for all MAT Funds.

50.    For example, Defendants advised Lead Plaintiff that:

A.    The Managing Agent would employ overall risk management and strict management processes designed to control and/or reduce the strategy-specific risks while increasing the probability of meeting the MAT Funds' investment objectives. The Funds sought to achieve attractive, risk-adjusted returns across the efficient frontier and improve portfolio diversification, cash flow, and returns for a given level of risk.

B.    Defendants' employment of an efficient portfolio allocation among these strategies within certain investment guidelines would produce a reasonable probability of achieving targeted absolute returns with low volatility over an investment horizon of five years.

11

JSH/D266344v2/F055307

51.    Although certain of the risks were identified in the offering documents, in discussions with each of the Individual Defendants both before investing in the MAT Funds and when it became clear to Lead Plaintiff that the MAT Funds were in financial crises, Lead Plaintiff was advised that the volatility potential was no greater than ten (10%) percent to fifteen (15%) percent of the investments.

52.    The Marketing Defendants and the Individual Defendants frequently reiterated the foregoing statements regarding the low volatility, low risk and fixed-income nature of the investments, and at all times Lead Plaintiff understood that to mean that he could lose no more than ten (10%) percent to fifteen (15%) percent of the investments.

53.    Due to Defendants' positive, but misleading and/or untrue statements, Lead Plaintiff invested a collective total of Two Million Four Hundred Thousand Fifty ($2,450,000) Dollars into the MAT Funds, and has not withdrawn from those investments.

### The Funds' Investments

54.    Notwithstanding the foregoing representations, the Management Defendants and the Individual Defendants had failed to sufficiently monitor and adequately assess the risks inherent in the MAT Funds' investments; determine the frequency and severity of defaults of the underlying assets of each of the structured finance securities invested in by the MAT Funds; develop and implement mechanisms that would reduce exposure under certain market conditions; and otherwise adequately engaging in hedging techniques to minimize risk.

12

JSH/D266344v2/F055307

55.    Specifically, Management Defendants and the Individual Defendants failed to monitor and assess the risks, or perform any real sensitivity analyses, relating to the write-downs from the sub-prime mortgage and collateralized debt obligations ("CDO") exposures and the effects of those events on the financial markets and municipal bond insurers. Moreover, Management Defendants and the Individual Defendants failed to develop and implement mechanisms to reduce exposure and risk of loss or otherwise adequately hedge against losses relating to the sub-prime and CDO exposures.

56.    CDO's are created by bankers and money managers, who bundle bonds or loans to form a given CDO, and then typically "split" or "slice" the CDO into several parts. The CDO parts are then sold individually to investors as separate securities. The credit risk of the CDO is divided among different tranches; senior tranches (often rated AAA), mezzanine tranches (often rated AA to BB), and equity tranches (typically unrated), which are the most junior. Losses are applied in reverse order of seniority. Accordingly, junior tranches offer higher coupons to compensate for the added risk. The senior tranche is protected by the subordinated security structure and would thus be the highest rated class, delivering the lowest return. The equity tranche (also known as the first-loss tranche) is most vulnerable because it is the first class to absorb losses, and thus, must offer higher coupons to compensate for the higher risk.

57.    In many cases, Citigroup itself, and its subdivisions were directly involved in the creation of CDO's. Thus, Defendants were keenly aware of the

13

JSH/D266344v2/F055307

operations of the CDOs and the probable effects of the CDOs on the market and bond insurers.

58.    Despite this knowledge, the Marketing Defendants and the Individual Defendants continued to represent the MAT Funds as a safe investment with minimal risk even as the sub-prime market was collapsing through increasing defaults and delinquencies, as described below.

## The Decline of the Sub-Prime Mortgage Market

59.    During the nation's recent housing boom, which occurred from late-2001 until mid-2006, CDOs backed by sub-prime loans became common investments and generated high rates of return.  During this period, there was a rapid growth in both loans to sub-prime borrowers and in non-traditional types of mortgages.  Indeed, by 2006, sub-prime mortgages comprised about 20% of all new mortgages, up from 2.5% in 1998.  As of December 31, 2006, Citigroup and its subsidiaries were among the largest managers of CDO's that included sub-prime mortgages.

60.    Even with the surge of risky loans, during the housing boom, the level of defaults remained low because borrowers who fell behind could avoid default by selling or refinancing into loans with better terms.  Consequently, the value of the CDOs backed by sub-prime loans remained stable, sustained by the steady stream of interest and principal payments.

61.    However, beginning at least as early as August 1, 2006, as home prices leveled off and declined in parts of the country, more borrowers fell behind on their mortgage payments.  Among sub-prime loans, delinquencies of more than 90

14

JSH/D266344v2/F055307

days, foreclosures and seized properties have risen to their highest levels in seven years. Those events have lead to a decrease in the value of CDOs backed by such loans.

62.   Despite the deteriorating market conditions, the Marketing Defendants and the Individual Defendants continued to represent that the MAT Funds were a safe investment, while at the same time the Management Defendants and the Individual Defendants failed to implement hedging and other strategies to minimize risk effectively.

63.   Notwithstanding their obligation to adequately assess, monitor and hedge the risks of the investments held by the MAT Funds, and their purported ability to create such hedges, the Management Defendants and the Individual Defendants failed to do so, in breach of their fiduciary duties.

64.   Additionally, the Marketing Defendants, the Management Defendants, and the Individual Defendants systematically and continuously failed to disclose to investors that the Management Defendants and the Individual Defendants were not (a) sufficiently monitoring and adequately assessing the risks inherent in the MAT Funds' investments; (b) determining the frequency and severity of defaults of the underlying assets of each of the structured finance securities invested in by the MAT Funds; (c) developing and implementing mechanisms that would reduce exposure under certain market conditions, engaging in an adequate sensitivity analysis to be responsive to the potential changes in market conditions, and disclosing the potential risks under certain market conditions; and (d) otherwise adequately engaging in hedging techniques to minimize risk. Based upon these

15

JSH/D266344v2/F055307

non-disclosures, the Marketing Defendants, the Management Defendants, and the Individual Defendants breached their fiduciary duties to Lead Plaintiff and other investors in the MAT Funds.

65. Moreover, due to Defendants' positive, but misleading and/or untrue statements regarding the low volatility of the MAT Funds and the minimal risk of loss, Lead Plaintiff invested and/or remained invested in the MAT Funds.

## THE COLLAPSE OF THE MAT FUNDS

66. The investment strategies utilized by the Management Defendants in the MAT Funds were misrepresented to Lead Plaintiff and all other investors similarly situated.

67. Despite representations to Lead Plaintiff and others regarding the low volatility and minimal risk of loss in the MAT Funds, as of December 31, 2007, the MAT Funds had experienced significant volatility and the Funds have significantly underperformed as a result.

68. Notwithstanding the foregoing, the Individual Defendants consistently advised Lead Plaintiff that the volatility would result in only a ten (10%) percent to fifteen (15%) percent loss of the investments, even if the market did not immediately stabilize.

69. Moreover, in response to investor inquiry regarding the permanent impairment of the MAT Funds, in or about January 2008 the Individual Defendants advised investors that the MAT Funds suffered almost no losses to date and that only client withdrawals from the MAT Funds would force permanent losses.

16

JSH/D266344v2/F055307

70.    In addition, in or about January 2008 the Individual Defendants advised investors that the volatility would be expected for the next three to six months, and would result in only a ten (10%) percent to fifteen (15%) percent loss of their investments if the market did not stabilize.

71.    At no time did Defendants advise Lead Plaintiff of the precipitous decline in the investments in "real time" to enable plaintiff to minimize losses through redemption of his interests in the MAT Funds prior to the eventual suspension of withdrawals.

72.    Moreover, Lead Plaintiff's accounts in the MAT Funds were not "marked" daily or at any regular interval so that Lead Plaintiff would be able to see from the statements, whether online or via paper statements, what the actual value of their investments in the MAT Funds were at any particular time. The Defendants had daily knowledge, or should have had such knowledge in the exercise of reasonable diligence, of the value of the MAT Funds.

73.    By failing to provide "real" time information about the value of the MAT Funds, the Defendants precluded Lead Plaintiff and all others similarly situated from knowing about the actual performance of the MAT Funds.

74.    In addition, at no time did Management Defendants or the Individual Defendants advise Lead Plaintiff of the potential impact of margin calls from the debt-funding sources or that margin calls had been made.

75.    In an effort to revive the failing MAT Funds, Citigroup committed $1 billion in equity to all of the MAT/ASTA investment products, which had the net effect

17

JSH/D266344v2/F055307

of diluting the value of any investment in the MAT Funds. As a result of the infusion of capital, Citigroup placed all of the MAT investment products on its balance sheet.

76.    On or about March 20, 2008, CAI indefinitely suspended any and all redemptions of MAT Funds' principal as well as any distributions from the MAT Funds. The suspensions remain in effect.

77.    As of May 2008, Lead Plaintiff and all other investors in the MAT Funds have losses ranging from approximately 48% to 85% of their investments based upon information provided in the online statements from SMITH BARNEY.

78.    Upon information and belief, as a result of the substantial losses, Citigroup plans to offer to compensate investors of the MAT Funds for a small portion of their interests in exchange for a general release of all claims against all Defendants and an assignment of their interests (the "Tender Offer").

79.    Upon information and belief, as the Tender Offer disclosures will demonstrate, the Marketing Defendants, the Management Defendants, and the Individual Defendants have breached their fiduciary duties to Lead Plaintiff and the Class by failing to disclose that they have not monitored and/or hedged the MAT Funds' positions as they had committed themselves to do, and that they otherwise failed to implement risk management procedures and other strategies to protect investors' interests. As a result of those breaches, Lead Plaintiff and the Class have sustained enormous financial losses.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

80.    Lead Plaintiff brings this action as a class action pursuant to CPLR § 901 on behalf of themselves and the members of a class (the "Class") of plaintiffs,

18

JSH/D266344v2/F055307

consisting of all persons and entities who purchased interests in the MAT Funds from March 1, 2003 to December 31, 2008, and were damaged thereby.

81.    Excluded from the Class are all Defendants, their officers, directors, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any other entity in which Defendants have a controlling interest or of which they are a parent or subsidiary.

82.    The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impracticable.

83.    Although the exact number of the Class members is unknown at this time and can only be ascertained through appropriate discovery, Lead Plaintiff believes that there are thousands of members of the Class who acquired interests in the MAT Funds from Defendants during the Class period.  For example, as of December 31, 2007, there were approximately 304,721,520 shares outstanding in MAT Five LLC – National; 544,534,677 shares outstanding in Municipal Opportunity Fund Five LLC – National Portfolio; and 196,400,000 shares outstanding in MAT Five LLC – National Portfolio II.  Record owners and other members of the Class may be identified from the records maintained by Defendants or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in other class actions.

84.    Lead Plaintiff's claims are typical of the claims of the members of the Class, as Lead Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct.

19

JSH/D266344v2/F055307

85.    Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent in class and commercial litigation.

86.    Lead Plaintiff has no interest that is antagonistic to or in conflict with those of the Class.

87.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. There will be no difficulty in the management of this action as a class action.

88.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether Defendants' acts, statements, and/or omissions, were tortious and led to damages to Class members ;

b.    whether Defendants participated in and pursued the common course of conduct complained of herein;

c.    whether documents, press releases, and other statements made or disseminated to investors misrepresented material facts about the management, investment, and risk aversion tactics to be utilized by the MAT Funds;

d.    whether the Offering materials, Financial Statements, and other public statements made by Defendants misrepresented and/or failed to disclose material facts;

e.    whether Defendants willfully or negligently departed from their principal strategy to the detriment of the Class; and

20

JSH/D266344v2/F055307

f.    whether the members of the Class have sustained damages and, if so, the proper measure of damages.

89.    If Lead Plaintiff and all others similarly situated were required to prosecute their individual cases, it would increase both the expenses and cause delay not only to the class members, but also to Defendants and the Court.

90.    Conversely, a class action of this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

91.    Without class certification of a plaintiff class, the prosecution of separate actions by individual class members class would create a risk of:

a.    Inconsistent or varying adjudications with respect to individual members of the plaintiff class that would establish incompatible standards of conduct for Defendants; or

b.    Adjudications with respect to the individual members of the plaintiff class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Class Claim—Negligent Misrepresentation)

92.    Lead Plaintiff repeat and reallege the allegations of paragraph 1 through 79 as if fully set forth herein.

21

JSH/D266344v2/F055307

93.    Defendants owed Lead Plaintiff and other members of the Class a duty of reasonable care in providing information to them about the MAT Funds.

94.    In order to induce Lead Plaintiff and other members of the Class to purchase interests in the MAT Funds, the Marketing Defendants, the Management Defendants, and the Individual Defendants made the misrepresentations and material omissions described above.

95.    The representations were false in material respects and Defendants knew they were false or, in the exercise of reasonable care, should have known they were false.

96.    Defendants knew or should have known that Lead Plaintiff and other members of the Class would rely upon the misrepresentations in the documents provided to them, as well as in the oral misstatements made to them.

97.    Moreover, Defendants knew or should have known that Lead Plaintiff and other members of the Class would rely upon the misrepresentations and/or omissions In assessing whether to purchase and/or remain invested in the MAT Funds.

98.    Lead Plaintiff and other members of the Class reasonably relied upon Defendants' grossly negligent misrepresentations and/or omissions and had no cause to believe that the statements made contained materially false and misleading information and/or omissions of material fact.

99.    In reliance upon the Defendants' grossly negligent misrepresentations, Lead Plaintiff purchased interests in the MAT Funds and remained invested although they could otherwise have redeemed their investment.

JSH/D266344v2/F055307

100. As a direct and proximate result of Defendants' grossly negligent misrepresentations and/or omissions, Lead Plaintiff and other Class members have been damaged in an amount to be proven at trial.

101. By virtue of the foregoing, as direct participants in the wrongs complained of above, the Marketing Defendants, the Management Defendants, and the Individual Defendants are liable, jointly and severally, to Lead Plaintiff and other members of the Class for negligent misrepresentation under New York law, with damages to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Class Claim--Fraud)

102. Lead Plaintiff repeat and reallege the allegations of paragraph 1 through 79 as if fully set forth herein.

103. The Marketing Defendants, the Management Defendants, and the Individual Defendants knowingly disseminated materially false information to members of the Class concerning, among other things, the risks associated with the MAT Funds and the performance of the MAT Funds.

104. The Marketing Defendants', the Management Defendants', and the Individual Defendants' misrepresentations had the intended effect of creating the false impression among purchasers of interests in the MAT Funds that there was little or no risk associated with the investment and/or that the risks were being adequately hedged.

105. As a direct and proximate result of the Marketing Defendants', the Management Defendants', and the Individual Defendants' fraudulent conduct, Lead Plaintiff and other members of the Class suffered damages in connection with their

23

purchase of interests in the MAT Funds and/or remaining invested in the MAT Funds during the Class Period.

106.   By virtue of the foregoing, as direct participants in the wrongs complained of above, the Marketing Defendants, the Management Defendants, and the Individual Defendants are liable, jointly and severally, to Lead Plaintiff and other members of the Class for fraud under New York law, with damages to be determined at trial.

## AS FOR AND FOR A THIRD CAUSE OF ACTION
### (Class Claim--Breach of Fiduciary Duty)

107.   Lead Plaintiff repeat and reallege the allegations of paragraph 1 through 79 hereof as if fully set forth herein.

108.   CAI, as Managing Agent for the MAT Funds, was and is responsible for investment management and administrative decisions.   Moreover, Bigelow was responsible for the management of the Municipal Opportunity Fund Five LLC – National Portfolio.

109.   Management Defendants and the Individual Defendants owed Lead Plaintiff and all Class members the highest degree of due care, good faith, candor, loyalty and fair dealing.   Nevertheless, CAI and Bigelow, as well as the Individual Defendants, failed to perform their duties in accordance with their fiduciary responsibilities.

110.   Over the course of several years, the Marketing Defendants, the Management Defendants, and the Individual Defendants systematically failed to disclose the volatile nature of the investments, failed to conduct proper sensitivity analyses regarding the risks inherent in the nature of the investments and/or failed to

24

properly disclose the results of those analyses to Lead Plaintiff and others, were not otherwise adequately engaged in hedging techniques as advertised in an effort to minimize risk, and misrepresented the overall investment risks and actual losses incurred.

111.   Had the Marketing Defendants, the Management Defendants, and the Individual Defendants disclosed the true facts to Lead Plaintiff and others, would have taken steps to avoid the massive losses they suffered including, but not limited to, withdrawing their investments.

112.   Based upon the foregoing acts and/or omissions, the Marketing Defendants, the Management Defendants, and the Individual Defendants have breached their fiduciary duties to Lead Plaintiff and other Class members.

113.   Lead Plaintiff and others have suffered damages proximately caused by the Marketing Defendants', the Management Defendants', and the Individual Defendants' breach of their fiduciary duties and are liable for damages in an amount to be proven at trial.

114.   By virtue of the foregoing, as direct participants in the wrongs complained of above, the Marketing Defendants, the Management Defendants, and the Individual Defendants are liable, jointly and severally, to Lead Plaintiff and other members of the Class for breach of fiduciary duty under Delaware law, with damages to be determined at trial.

25

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Derivatively on Behalf of the MAT Funds
### For Breach of Fiduciary Duty)

115.   Lead Plaintiff repeat and reallege the allegations of 1 through 114 hereof as if fully set forth herein

116.   Under Delaware law, the Marketing Defendants, the Management Defendants, and the Individual Defendants owed the MAT Funds the highest obligations of due care, good faith, candor, loyalty and fair dealing.

117.   By reason of the conduct described above, the Management Defendants and the Individual Defendants breached their fiduciary duties to the MAT Funds, including by their grossly negligent and/or bad faith failure to adequately assess, monitor and hedge the credit risks of investments held by the MAT Funds and otherwise failing to manage the MAT Funds with the requisite amount of due care.

118.   By reason of the conduct described above, the Marketing Defendants and the Individual Defendants breached their fiduciary duties to the MAT Funds by failing to disclose the risks of the investments and the inability of the Management Defendants and the Individual Defendants to hedge those risks while the MAT Funds' portfolio values were declining.

119.   The MAT Funds have suffered damages proximately caused by Defendants' breaches of their fiduciary duties, and Defendants are liable for damages in an amount to be proven at trial.

120.   Lead Plaintiff will adequately and fairly represent the interests of the MAT Funds in enforcing and prosecuting their rights.

JSH/D286344v2/F055307

121.   Lead Plaintiff did not make any demand on the MAT Funds to institute this action because such demand would have been a futile and useless act, given that the Citigroup entities sued herein control the MAT Funds and are the primary wrongdoers.

**WHEREFORE**, Lead Plaintiff demands judgment as follows:

a. Declaring that this lawsuit is properly maintainable as a class action and certifying Lead Plaintiff as representative of the Class;

b. Awarding compensatory damages against Defendants upon behalf of the Class and the MAT Funds as described above, jointly and severally, in an amount not yet fully ascertained, which when determined with sufficient specificity will be alleged and proven at trial;

c. Awarding pre-judgment interest at the maximum rate allowable by law;

d. Awarding Lead Plaintiff attorneys fees, costs and disbursements and;

e. Granting such other and further relief as the Court may deem just and proper.

Dated: Jericho, New York
        June 5, 2008

SILVERMAN ACAMPORA LLP
Co-Counsel for Lead Plaintiff

By: Ronald J. Friedman, Esq.
    Jay S. Hellman, Esq.
    Members of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York  11753
(516) 479-6300

27

JSH/D206344v2/F055307

Dated: New York, New York
      June 5, 2008

**BRAGAR EAGEL WEXLER & SQUIRE, P.C.**
Co-Counsel for Lead Plaintiff

By: _____ Lawrence P. Eagel, Esq.
885 Third Avenue, Suite 3040
New York, New York 10022
(212) 308-5858

28

JSH/D266344v2/F055307

# Exhibit B

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CIV 4152

|  |  |
|---|---|
| MARIE RAYMOND REVOCABLE TRUST, on Behalf of Itself and All Others Similarly Situated, | Civil Action No. |
|  | CLASS ACTION |
| Plaintiff, | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND DELAWARE LAW |
| vs. |  |
| MAT FIVE LLC, CITIGROUP ALTERNATIVE INVESTMENTS LLC, CITIGROUP FIXED INCOME ALTERNATIVES, CITIGROUP GLOBAL MARKETS INC. and REAZ ISLAM, |  |
| Defendants. | DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1.    This is a class action on behalf of all persons or entities who purchased or otherwise acquired shares of the MAT Five LLC fund ("MAT Five") pursuant and/or traceable to a false and misleading Private Placement Memorandum ("PPM") on or about December 18, 2006 and/or its Supplements and who were damaged thereby (the "Class").  This action charges MAT Five, Citigroup Global Markets Inc. ("Citigroup Global"), Citigroup Alternative Investments LLC ("CAI") and Citigroup Fixed Income Alternatives ("CFIA") with violation of §12(a)(2) of the Securities Act of 1933 (the "1933 Act") and Delaware law.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to §12(a)(2) of the 1933 Act [15 U.S.C. §77l(a)(2)] and Delaware law. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. This Court has supplemental jurisdiction under 28 U.S.C. §1367. In connection with the acts complained of, defendants used the instrumentalities of interstate commerce and the U.S. mails.

3.    The violations of law complained of herein occurred in part in the District, including the dissemination of materially false and misleading statements complained of herein into this District. Citigroup Global, CAI and CFIA have operations located in the District. The MAT Five PPM sets forth that matters shall be submitted to the jurisdiction of New York state or federal court.

## PARTIES

4.    Plaintiff Marie Raymond Revocable Trust, formerly known as Carl and Karen Schaefer Revocable Trust, acquired shares pursuant to the PPM and the presentation materials for MAT Five ("Selling Documents") and has been damaged thereby.

5.    Defendant MAT Five is a Delaware limited liability company that makes investments in limited liability company interests issued by Municipal Opportunity Fund Five National ("MOF

- 1 -

Five"), a Delaware limited liability company that makes leveraged investments in fixed-rate, tax-exempt municipal bonds.

6.     Defendant Citigroup Global represents the corporate banking and capital markets arm of Citigroup Inc.'s ("Citigroup") broader Corporate and Investment Banking group.  Citigroup Global provides advisory services regarding mergers and acquisitions, divestitures, and financing. It is also involved in the underwriting and trading of debt, equities, and derivatives.  Citigroup Global acted as the Placement Agent for MAT Five.

7.     Defendant CAI is an integrated alternative investments platform that manages a wide range of products across five asset classes, including private equity, hedge funds, real estate, fixed income and infrastructure.  CAI manages capital on behalf of Citigroup, as well as third-party institutional and high net worth investors, and has headquarters located at 731 Lexington Avenue, 27th Floor, New York, NY.  CAI acted as the Managing Agent for MAT Five.

8.     Defendant CFIA specializes in the identification, development and management of highly innovative, alternative fixed-income products.  CFIA assisted in the sale of MAT Five shares, helping to draft and disseminate the Selling Documents.

9.     Defendant Reaz Islam ("Islam") was the manager of the MAT Five fund.

10.     Defendants received substantial fees for their participation in the selling and management of MAT Five.  CAI, as Managing Agent, received a base management fee of 0.35% (0.38% for the New York portfolio and the California portfolio) of the par amount of the underlying municipal bonds plus the notional value of any swaps.  There was a 1% placement fee charged to investors.

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this action as a class action on behalf of a class consisting of all persons or entities who acquired the shares of MAT Five pursuant and/or traceable to the false and

- 2 -

misleading PPM on or about December 18, 2006 and/or its Supplements and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

12.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are dozens of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Citigroup Global or its transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. The PPM issued hundreds of millions of dollars worth of shares.

13.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected, although to different degrees, by defendants' wrongful conduct in the violation of federal law that is complained of herein.

14.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

15.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether defendants violated the 1933 Act; whether the Selling Documents issued by defendants to investors omitted and/or misrepresented material facts about the structure of the investments in municipal bonds; whether defendants breached their fiduciary duties under Delaware law; and to what extent the members of the Class have sustained damages and the proper measure of damages.

- 3 -

16.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

17.    During late 2006 and continuing into early 2007, Citigroup, through CFIA and CAI, targeted many of its clients who were believed to be interested in fixed-income investments which would provide higher yields. One type of investment Citigroup promoted to its investors was municipal bond opportunities involving the arbitrage of tax-exempt and taxable bonds. These were actually very risky investments which could drop precipitously if the markets changed, or if the investments were not properly managed.

18.    Municipal bond arbitrage, also called municipal bond relative value arbitrage, municipal arbitrage, or just muni arb, generally consists of building a leveraged portfolio of high-quality, tax-exempt municipal bonds and simultaneously hedging the duration risk in that municipal bond portfolio by shorting the equivalent taxable corporate bonds. Municipal arbitrage is a relative value strategy that attempts to seize upon an inefficiency that is related to government tax policy; interest on municipal bonds is exempt from federal income tax. The arbitrage manifests itself in the form of a relatively cheap longer maturity municipal bond, which is a municipal bond that yields significantly more than 65% of a corresponding taxable corporate bond. The steeper slope of the municipal yield curve allows participants to collect more after-tax income from the municipal bond portfolio than is spent on the interest rate swap; the carry is greater than the hedge expense. Positive, tax-free carry can, if properly managed, reach into the double digits. The end goal is to limit this

- 4 -

principal volatility, eliminating its relevance over time as the high, consistent, tax-free cash flow accumulates.

## THE FALSE AND MISLEADING SELLING DOCUMENTS

19.     In December 2006, defendants began marketing the MOF Five funds, initially referencing the MAT Five fund, a limited liability company, of up to $400 million in limited liability company interests, or shares.  The MAT Five fund, which had a $500,000 minimum investment requirement, was promoted to investors as designed to produce stable cash flows in a tax-advantaged arbitrage opportunity.  It was a proprietary strategy designed for individual investors.  The MAT Five was the fifth series of the same type of strategy and new MAT Five investors were told that the prior four had all performed well and either met or exceeded targets.  Investors were told that the prior four funds had net returns of 14% on a tax equivalent basis.  That the MAT Five fund was intended for fixed-income investors was shown by an article by defendant Islam (and published by CAI) in January 2007, entitled "New Horizons in Fixed Income Investing."

20.     Specifically, defendants represented that:

- The MAT Five fund would seek attractive tax-advantaged returns, with hedging strategies designed to manage fluctuations in Net Asset Value ("NAV").

- The selected instruments would be AAA/AA-rated municipal bonds, swaps, swaptions and Treasuries.

- Each municipal bond at the time of purchase would be rated at least A3 by Moody's Investors Service ("Moody's") and AA by Standard & Poor's ("S&P").[1]

---

[1]     Moody's A3: Obligations rated A are considered upper-medium grade and are subject to low credit risk.  S&P's AA: Quality borrowers, a bit higher risk than AAA.

21.    Thus, all of the classes were categorized as investment grade, providing comfort to investors.

22.    The PPM emphasized the risk management aspects of the strategy and that capital loss parameters might limit opportunities:

> The Fund expects to achieve its goals through a ***disciplined and experienced approach*** to trading and a ***rigorous risk management strategy*** within the Investment Restriction and Guidelines. Key components of the Fund's investment approach are the following:
>
> • Relative Value Investing
>
> • Portfolio Monitoring and Hedging Strategies
>
> &ast;      &ast;      &ast;
>
> The Fund's portfolio will be marked to market on a daily basis. The Managing Agent or Sub-Agent will evaluate the appropriateness of each Underlying Municipal Bond on an ongoing basis. ***Any perceived changes in credit quality, yield spread relative to the Municipal Market Data index or an Underlying Municipal Bond's relative value will cause the Managing Agent or Sub-Agent to re-evaluate the position.*** The Fund intends to capitalize on opportunities occasionally by selling Underlying Municipal Bonds that have appreciated against the Hedge Agreements and to liquidate positions perceived by the Managing Agent or Sub-Agent to add unreasonable risk to the Fund's portfolio. The Managing Agent or Sub-Agent will evaluate the Hedge Agreements that are in place for each Underlying Municipal Bond and adjust them based on, among other things, the structure of the particular Underlying Municipal bond, the current market environment and the Managing Agent's or Sub-Agent's view of the direction of the market. ***The capital loss parameters established with the Managing Agent, which the Managing Agent and each Sub-Agent intend to follow, may limit the Managing Agent's and each Sub-Agent's choice of new or replacement Hedge Agreements or Synthetic Agreements, and may reduce the economic benefit of a particular hedge by comparison to a hedge not subject to such parameters.***

23.    In fact, the lack of a disciplined approach and the search for larger gains would lead to risks of the loss of most of Class members' investment in MAT Five.

24.    The Selling Documents also represented:

> • **Experienced Management, Oversight and Investor Support:** CFIA a business unit of Citigroup Alternative Investments ("CAI"), is the Managing Agent responsible for portfolio management and risk oversight. As of

11/30/2006, CFIA manages over $4.3bn of capital and $23.9bn of leveraged assets and has a strong track record of performance. CFIA will provide quarterly reporting for the Fund.

25. With respect to CFIA and CAI, the Selling Documents represented that:

**Citigroup Fixed Income Alternatives**

> CFIA is a Leading Global Provider of Fixed Income Alternative Strategies

> Established in 1995

> Stable and Experienced Team

> Alignment of Interests

> History of Innovation and Attractive Performance

**Citigroup Alternative Investments**

> Core Citigroup Business

> CFIA is a business unit of CAI

> AUMs of $130 billion+ (Capital of $45 billion)

> Citigroup Proprietary Capital of $10 billion

> 875+ Professionals across 14 Investment Centers

26. Defendants caused the Selling Documents to be disseminated beginning in 2006 in connection with the issuance of hundreds of millions of dollars of shares. The Selling Documents were false and misleading in that the strategy to be employed would not protect investors as suggested by the ratings of the underlying investments.

27. Moreover, defendants did not have risk management practices in place to prevent employees of CAI from engaging in highly risky investment practices. The representations by defendants were made with knowledge that the MAT Five fund was going to implement the high-risk strategies. As a result of these risky strategies, plaintiff and the Class have suffered the cessation of distributions and extreme loss in value of the shares. The shares were sold with

- 7 -

assurances that they would return a 7%-8% yield, federal income tax free. The offering was so

successful that new investors were told that the MAT Five offering would be oversubscribed.

      28.    In or about April 2007, defendants disseminated MAT Five's quarterly report as of

March 31, 2007, which stated in part:

> MAT Five National Portfolio (the "Fund") completed its first capital raise and began operations on February 14, 2007. Thus far, the markets have presented rather favorable investment opportunities for the Fund's initial ramp-up of the municipal arbitrage strategy and for purchasing short-term cash collateral. New municipal supply has been running ahead of our initial expectations, with $106 billion issued during the first 3 months of 2007, a 53% increase over last year's near record levels. Given this magnitude of supply, investor demand began to wane near the end of the period. As a result, longer-term municipal yields moved slightly higher (cheaper) vs. Treasuries, which increased Long Ratios* and created buying opportunities for the Fund. We took advantage of these attractive buying opportunities, and as of March 31, 2007, the Fund was approximately 1.8 times leveraged. Subsequent to quarter-end, as of April 27, 2007, the Fund's leverage increased to 2.8 times. Once fully ramped-up, we continue to target a leverage range of 7-9 times, which we hope to have completed within 12-14 months of the initial closing, possibly sooner if market conditions continue to cooperate.

> Looking ahead, we are optimistic about the investment opportunities, and continued ramp-up of the Fund. We believe that municipal bond issuance is likely to remain heavy for the next couple of months, with the possibility that 2007 full year supply may surpass the record $408 billion set in 2005. The heavy issuance volume is likely to keep municipals attractive vs. Treasuries and aide the continued ramp-up of the Fund. In addition, we expect that in mid-to-late 2007, the Fed is likely to cut rates, *which we believe could cause the yield curve to further steepen and create additional relative value opportunities*. In summary, we are satisfied with the Fund's ramp-up thus far, and our outlook for the near term remains quite optimistic. We will provide you a more detailed summary in our next quarter report as of June 30, 2007.

(Footnote omitted.)

      29.    In or about July 2007, defendants disseminated MAT Five's quarterly report as of

June 20, 2007, which stated in part:

> For the quarter ended 6/30/07, the MAT Five National Portfolio (the "Fund") continued to ramp up the initial capital investment while posting a slight negative total return as income generation was offset by a decline in NAV that resulted from municipals generally underperforming relative to taxables, as more fully described below. Under what we believe were relatively attractive market conditions, the Fund

- 8 -

continued to deploy capital into the municipal arbitrage strategy and began to generate higher levels of tax-exempt income. On 7/16/07, the Fund made its first distribution to investors equal to approximately 1% of the initial investment. Going forward, the Fund anticipates making regular quarterly distributions with the next distribution expected on 10/15/07.

\*        \*        \*

Looking ahead, we are optimistic that issuance volume could remain heavy and aide in the continued ramp-up of the Fund. In addition, economic uncertainty and concerns of a potential sub-prime contagion could keep bond market volatility elevated, cause the yield curve to steepen further and create relative value and income opportunities for the Fund. In summary, we are pleased with the Fund's ramp-up thus far, and our outlook for the near term remains optimistic. Please see below for the details of your specific series. We will provide you a more detailed summary in our next quarterly report as of September 30, 2007.

## DISCLOSURES BEGIN TO EMERGE ABOUT PROBLEMS WITH THE SHARES

30.    In the fall of 2007, CFIA issued MAT Five's quarterly report as of September 30, 2007, which showed how poorly it was performing, with a negative year-to-date return of 9.15%. However, the report assured investors that the fund had taken advantage of market volatility:

Overall during the period, municipals underperformed vs. Treasuries and the Fund posted a total return of −7.85%. Subsequent to quarter end and through 10/18/07, Fund returns have increased by approximately 3.5%. Over the next 3-6 months, we believe longer-term muni-to-Treasury yield relationships will continue to decline towards more historical levels as the bond markets revert back towards normal levels. The Fund looked to benefit from this period of volatility by adding positions at what we believe were very attractive levels, as it continued to ramp up the initial capital investment (leverage increased to 6.8x from 4.7x – with target of approx. 8x). It is important to note *that periodic fluctuations in NAV do not materially impact the Fund's ability to generate income, and on 10/15/07, the Fund made its second distribution to investors equal to approximately 1.75% of their initial investments.* Going forward, the Fund anticipates making regular quarterly distributions with the next distribution expected on 1/15/08.

31.    Unfortunately for investors, defendants' assurances turned out to be false. The quarterly report as of December 31, 2007, stated:

From a historical perspective, the quarter ended December 31, 2007 was one of the most volatile quarters ever for the bond markets as the spreading sub-prime contagion, liquidity crunch and economic uncertainty caused a dislocation between

- 9 -

tax-exempt and taxable yields, which resulted in the Fund *posting a net total return of −17.08%.*

32.    This report also disclosed that leverage had increased substantially in the December 2007 quarter:

> The Fund's investment and hedging strategies are long-term in nature and seek to capture an income spread while also attempting to mitigate the longer-term impact of interest rate fluctuation on NAV; they do not fully eliminate the interim volatility between shorter-term movements in Treasury rates because municipal rates typically lag. Over the quarter, the Fund increased leverage from 6.9x to 8.6x.

33.    During this time investors were understandably concerned. Defendants or their agents communicated with many investors explaining that the issue was the yield relationship between municipal bonds and Treasuries, and that the flight to credit quality had caused Treasury yields to be unusually low. However, investors were assured that more money had been put to work during this unusual time and prices were already recovering, which would lead to better results in the future.

34.    Then, on March 20, 2008, CAI wrote a letter to investors which stated in part:

> Dear Municipal Opportunity Fund Five National (MOF Five National – doing business as ASTA/MAT Five National) Investor:
>
> As many of you are aware, over the past few months the global bond markets have been experiencing a reduction in the availability of credit and market liquidity. During the past few weeks, this credit crunch has rapidly accelerated and spread into the municipal bond markets. As a result, the cash positions and net asset values of the ASTA/MAT municipal arbitrage fund portfolios, which include MOF Five National, have been severely impacted. It is in this light that Citi committed $1 billion of equity to the ASTA/MAT platform in early March 2008. Citi intends for this equity capital to assist in preserving fund value for existing investors by permitting the fund to make margin calls and continue to operate during this very stressful liquidity period. Of the $1 billion committed by Citi, as of today, $661 million has been invested across the ASTA/MAT funds, including in MOF Five National. The terms and conditions of Citi's investment into these funds have not yet been finalized, but we expect to do so shortly and will communicate with you at that time.
>
> Because of MOF Five National's low cash position and the ongoing dislocations in the credit markets, Citigroup Alternative Investments LLC ("CAI"), as investment manager, believes that it is advisable and in the best overall interests of

- 10 -

investors *to indefinitely suspend the fund's income distributions in an effort to preserve liquidity.* The income received from the securities in MOF Five National will accrue to the overall fund value. It is important to note that CAI is taking this action across all of its ASTA/MAT fund portfolios, and will continue to look for opportunities to sell assets, increase liquidity and reduce leverage to allow the funds to move toward a more defensive position. In addition, in those ASTA/MAT funds where investor lock-up periods have expired CAI has informed investors *that it is delaying redemptions of shares (and payments of related redemption proceeds) in an effort to preserve liquidity.* CAI expects to re-evaluate these decisions at the conclusion of the second quarter 2008, in the light of credit and other market conditions prevailing at the time.

35.     As *The Wall Street Journal* reported on April 29, 2008:

The losses by the two hedge funds at issue, called Falcon and ASTA/MAT, are the latest examples of the credit crunch hammering retail, or individual, investors who believed they were holding low-risk securities.

\*     \*     \*

Last year, as Citigroup was gearing up to launch new Falcon and ASTA/MAT funds, it encouraged brokers at Smith Barney and in Citigroup's private bank to pitch the funds to their best customers. One reason for the push: Initial market tremors caused the Falcon family to decline by more than 10%, and Citigroup hoped to stabilize it with an infusion of cash.

By September, the new Falcon fund had raised about $71 million. A new ASTA/MAT fund raised about $800 million. Both new funds were heavily comprised of retail investors.

Citigroup brokers and fund managers assured prospective investors that the new hedge funds were low-risk, with Falcon likely to post losses of no more than 5% a year in the worst-case scenario, according to people familiar with the situation.

"That's why they bought it," says a Smith Barney broker whose clients, many of them wealthy retirees, invested in the Falcon fund. "These kinds of clients weren't looking for a home run."

\*     \*     \*

As of March 31, the new Falcon fund was worth just 25% of its initial value, according to internal documents. The ASTA/MAT fund had shriveled by Feb. 29 to less than 10% of its original value, the documents show. *Even as their performances deteriorated, Reaz Islam, the 41-year-old manager of the funds, reassured uncertain brokers and clients that the funds were likely to rebound, according to people familiar with the matter.*

- 11 -

36.    Plaintiff has been harmed due to the improper assurances made about the shares and the cessation of distributions and the decline in value of the shares.

## DEFENDANTS' FIDUCIARY DUTIES

37.    As managers of a Delaware Limited Liability Company, defendants CAI, CFIA and Islam have an affirmative fiduciary obligation to refrain from self-dealing and act in the best interests of MAT Five's members to preserve the assets of the fund. To diligently comply with these duties, the managers may not take any action that:

(a)    adversely affects the value of the assets of the fund and the return provided to MAT Five's members;

(b)    contractually prohibits them from complying with their fiduciary duties;

(c)    otherwise adversely affects their duty to monitor, supervise and direct the investments of MAT Five for the fund's members; and/or

(d)    provides the managers with preferential treatment at the expense of, or separate from, MAT Five's members.

38.    In accordance with their duties of loyalty and good faith, the defendants, as managers of MAT Five, are obligated to refrain from:

(a)    participating in any transaction where the manager's loyalties are divided;

(b)    participating in any transaction where the managers are entitled to receive a personal financial benefit not equally shared by the members of MAT Five; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the members.

39.    Plaintiff alleges herein that defendants CAI, CFIA and Islam, separately and together, and aided and abetted by the other defendants, violated their fiduciary duties owed to plaintiff and the other members of MAT Five in connection with their operation of MAT Five and the

- 12 -

investments by Citigroup in the fund, including their duties of loyalty, good faith, candor, due care and independence, insofar as they were at least grossly negligent in their management of the MAT Five fund's assets, engaged in self-dealing and/or obtained for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the Class, and/or aided and abetted therein. As a result of the defendants' gross negligence, self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their shares in MAT Five.

## COUNT I

### For Violation of §12(a)(2) of the 1933 Act
### Against All Defendants

40.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

41.     By means of the defective PPM which operated as a Prospectus (the "PPM/Prospectus"), defendants promoted the sale of MAT Five shares to plaintiff and other members of the Class.

42.     On June 17, 2005, defendants prepared and caused to be filed the PPM/Prospectus. Citigroup Global was the Placement Agent. The PPM/Prospectus stated in part:

> The investment objective of the Fund is to generate attractive after-tax returns through investments in limited liability company interests (the "Underlying Shares") issued by Municipal Opportunity Fund Five LLC, a Delaware limited liability company ("MOF Five"), a fund that makes economically leveraged investments in fixed-rate, tax-exempt municipal bonds. MOF Five will seek to mitigate the accompanying interest rate risks through proprietary hedging strategies as described in Annex I.

43.     The PPM/Prospectus included numerous risk factors, one of which involved the effect of rising interest rates:

- 13 -

The market value of municipal bonds, like that of other fixed-income investments, generally declines as prevailing interest rates increase. Similar market value fluctuations may occur with Eligible Investments. In addition, their market value is dependent on the credit of the issuer of such bonds. Because the value of Residual Certificates is directly tied to the value of the Underlying Municipal Bonds, a decrease in the market value of those municipal bonds would cause a decrease in the value of the Residual Certificates. Such decreases could lead to a decline in the Fund's Net Asset Value and could cause material losses to investors in the Fund.

44.    This implied that declining interest rates would cause an increase in market value of the shares.

45.    The PPM/Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed plaintiff and the other members of the Class who purchased shares of the MAT Five fund pursuant to the PPM/Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the PPM/Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the PPM/Prospectus as set forth above.

46.    Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the PPM/Prospectus at the time plaintiff acquired the MAT Five shares.

47.    By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased MAT Five fund shares pursuant to the PPM/Prospectus sustained substantial damages in connection with their purchases of these shares. Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration

- 14 -

paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT II

### Claim for Breach of Fiduciary Duties and/or Aiding and Abetting
### Breach of Fiduciary Duty Under Delaware Law
### Against All Defendants

48.    Plaintiff incorporates ¶¶1-47 by reference.

49.    Defendants have violated the fiduciary duties of care, loyalty, candor, good faith and independence owed to the members of MAT Five and have acted to put their personal interests ahead of the interests of MAT Five's members, and/or have aided and abetted therein.

50.    By the acts, transactions and course of conduct alleged herein, defendants CAI and Islam, aided and abetted by the remaining defendants, failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the members of the MAT Five fund by:

        (a)    failing to properly preserve the assets of the MAT Five fund; and

        (b)    ignoring or not protecting against the numerous conflicts of interest resulting from the managers' own interrelationships or connection with Citigroup's investment in the MAT Five fund.

51.    While investors have lost most of their investment, Citigroup made 44% on its investment in the MAT Five fund during March 2008.

52.    By reason of the foregoing acts, practices and course of conduct, defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class, and/or have aided and abetted therein.

53.    As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed in that they have not and will not receive their fair portion of the value of the

- 15 -

MAT Five fund's assets and have been and will be prevented from obtaining a fair price for their shares.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.  Determining that this action is a proper class action and certifying plaintiff as Class representative;

B.  Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.  Awarding rescission or a rescissory measure of damages; and

E.  Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: May 1, 2008                    COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP
                                      SAMUEL H. RUDMAN
                                      DAVID A. ROSENFELD


                                      DAVID A. ROSENFELD

                                      58 South Service Road, Suite 200
                                      Melville, NY 11747
                                      Telephone: 631/367-7100
                                      631/367-1173 (fax)

- 16 -

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

DEL SOLE CAVANAUGH STROYD LLC
STEPHEN J. DEL SOLE
PATRICK K. CAVANAUGH
The Waterfront Building
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Telephone: 412/261-2393
412/261-2110 (fax)

Attorneys for Plaintiff

- 17 -

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MARIE RAYMOND REVOCABLE TRUST ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the
      direction of plaintiff's counsel or in order to participate in this private action
      or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class,
      including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the
      securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Cost of MAT Five Shares Acquired |
|---|---|
| February 14, 2007 | $500,000 |
| | |
| | |

**Sales:**

| Date Sold | Proceeds of MAT Five Shares Sold |
|---|---|
| none | |
| | |
| | |

5.    Plaintiff has not sought to serve or served as a representative party for a class
      in an action filed under the federal securities laws except as detailed below
      during the three years prior to the date of this Certification:

Page 1 of 2

MAT FIVE

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of April, 2008.


By:

Carl Schaefer    *Carl Schaefer*

Karen Schaefer    *Karen Schaefer*

Its:   Trustees

Page 2 of 2

MAT FIVE